# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | | |
|---|---|---|
| DAVID WALKER, | ) | |
| Plaintiff, | ) ) ) | |
| VS. | ) | No. 1:18-cv-1252-JDT-cgc |
| ARVIL CHAPMAN, ET AL., | ) ) ) | |
| Defendants. | ) ) | |

### ORDER DISMISSING COMPLAINT,
### CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
### AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

On December 10, 2018, Plaintiff David Walker, who is incarcerated at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 and an application to proceed *in forma pauperis* in the U.S. District Court for the Middle District of Tennessee. (ECF Nos. 1 & 2.) The complaint addresses events that allegedly occurred during Walker's incarceration at the Whiteville Correctional Facility (WCF) in Whiteville, Tennessee. (ECF No. 1 at PageID 2.) On December 21, 2018, Chief Judge Waverly D. Crenshaw, Jr., granted leave to proceed *in forma pauperis*, assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b), and transferred the case to this Court. (ECF No. 4.) The Clerk shall record the Defendants as WCF Warden Arvil Chapman; C. Bernard, WCF Officer in Charge (OIC); Ellery Grier, WCF Internal Affairs Officer; Lieutenant First

Name Unknown (FNU) Neadham; A. Walker, WCF Program Warden; FNU Walton, WCF Chief Security Officer; and Joy Trouder, WCF Classification Coordinator.

Walker alleges that on September 7, 2018, he and his cellmate, T. Brown, were awoken by three officers, strip-searched, and taken from their cell while the officers searched it. (ECF No. 1 at PageID 8.) After the officers found nothing, Walker and Brown returned to the cell and went back to sleep. (*Id.*) When Walker awoke later that morning, he noticed that every cell door in the pod except his was open, and other inmates told him that a sign posted on his door read "DO NOT OPEN AT ALL!" (*Id.* (emphasis in original).) Defendant Grier later informed Walker that his cell was on lockdown because an officer was "caught bringing drugs in to the facility" allegedly for Walker, Brown, and inmate D. Santiago. (*Id.* at PageID 8-9.) Grier questioned Brown about the incident, and Brown allegedly told Grier and Defendant Bernard that everything belonged to Brown and that Walker was uninvolved. (*Id.* at PageID 9.) Grier allegedly told Walker she would move him to another cell and that Brown would receive the charges. (*Id.*) Officers drug-tested Walker, who tested negative, and Santiago, who tested positive, but left Walker locked in his cell. (*Id.*)

Two days later, on September 9, 2018, Walker remained locked in his cell, but a sergeant removed the sign and told Walker the WCF computers did not show Walker as having a cell restriction. (*Id.*) The next day, Defendant Bernard removed Walker from a program class and took him to a room with Brown and Santiago. (*Id.*) Bernard ordered Grier to "lock [Brown's] ass up" for admitting to owning the drugs found earlier. (*Id.*) Walker alleges that Bernard ordered Grier to leave her office so he and an unnamed

2

"accompli[ce]" could "interrogate" Walker. (*Id.*) When Grier refused, Bernard allegedly yelled, "Fuck it then! . . . Lock them all up until I say otherwise!" (*Id.*) Walker returned to class believing "everything was fine." (*Id.*)

Walker alleges that, four days later, on September 14, 2018, he was taken from class and escorted by Defendant Neadham and Defendant Walker first to the medical department, because of previous surgery on his leg, then to segregation. (*Id.* at PageID 9-10.) Walker asked why he was being taken to segregation, and Neadham told him Defendant Bernard had ordered it. (*Id.* at PageID 10.) Walker allegedly was locked in the segregation's showers for four hours, getting wet from the water dripping where other inmates had showered earlier and "complaining about my leg." (*Id.*) On September 18, 2018, Walker received a pending investigation disciplinary report written by Neadham. (*Id.*; *see also id.* at PageID 23-25.) Two days later, Defendants Bernard and Grier visited Walker in his cell and recorded him answering questions about the officer who had brought drugs into the facility for Brown. (*Id.* at PageID 10.) Walker protested his innocence, but Bernard insisted that Walker knew who else may have been involved. (*Id.* at PageID 10-11.) Bernard allegedly threatened to write false disciplinary charges against Walker that would force him to be housed in segregation and strip him of his good-time credits and "to do all I can to make your life pure hell." (*Id.* at PageID 11.)

On September 21, 2018, Walker received two disciplinary infractions prepared by Defendant Grier ordering Walker into segregation. (*Id.*; *see also id.* at PageID 18-22.) Walker remained in segregation for seven days, during which he received no personal hygiene items. (*Id.* at PageID 11.) On October 2, 2018, as Defendants Walker and Walton

3

were inspecting the segregation unit, Plaintiff Walker told Walton that his placement in segregation violated prison policy. (*Id.*) Walton allegedly agreed but told him it was "out of my hands, I can't help you." (*Id.*) Defendant Walker also agreed that Plaintiff Walker should have received 24 hours' notice and assured him she would have a disciplinary board member come by. (*Id.* at PageID 12.) An inmate advisor came by the next day and told Walker that Brown and Santiago would accept the disciplinary charges so that Walker could be released from segregation. (*Id.*) Walker, however, was not released from segregation, and a sergeant informed him that the Tennessee Bureau of Investigation was looking into the matter, causing the delay. (*Id.* at PageID 12, 14.) On October 4, 2018, Walker was transferred from the WCF to the TTCC without seeing a classification coordinator (Defendant Trouder) or being given a reason for the transfer. (*Id.* at PageID 14.)

Walker asserts claims under the First, Eighth, and Fourteenth Amendments against the Defendants.[1] (*Id.* at PageID 13-15.) Walker sues the Defendants in their official and individual capacities. (*Id.* at PageID 2-3.) He seeks declaratory relief, both compensatory and punitive damages against each Defendant, and costs of his suit. (*Id.* at PageID 15.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

---

[1] Walker also asserts violations of his rights against "Disciplinary Officer Powell," whom he does not name as a Defendant or mention elsewhere in his complaint. (ECF No. 1 at PageID 13.)

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). The Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for

failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Walker filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Walker's official capacity claims must be treated as having been brought against the WCF, which employs the Defendants. Those claims in turn are construed as against CoreCivic, which manages the WCF.[2] "A private corporation that performs the traditional state function of operating a prison acts under color of state law for purposes of § 1983."

---

[2] *See* https://www.tn.gov/correction/sp/state-prison-list/whiteville-correctional-facility.html ("Whiteville Correctional Facility (WCFA) is a time-building prison with a security designation of medium. WCFA is managed by CoreCivic, a private corrections management firm.").

6

*Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against CoreCivic, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Walker has not alleged that a policy or custom of CoreCivic was the "moving force" behind the alleged violation of his constitutional rights. He instead alleges that the individual Defendants, through their own actions, are responsible for the alleged violations of his rights. He therefore fails to state a claim against CoreCivic or against any Defendant in his or her official capacity.

Walker does not allege any action by Defendants Chapman or Trouder. When a complaint fails to allege any wrongdoing by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Walker asserts that Defendant Bernard's actions violated his right to due process. Walker, however, alleges no valid due process right that allegedly was violated. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of*

*Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison restriction does not give rise to a protected liberty interest unless the restriction imposed constitutes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to administrative or punitive segregation, the loss of package privileges, fines, and restitution generally does not constitute an atypical and significant hardship in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). An increased security classification also does not constitute an atypical and significant hardship. *See Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (citing *Sandin*, 515 U.S. at 484).

Walker alleges that Defendant Bernard threatened to place him in segregation, and delivered on that threat, where he would be unable to earn good time credits. Walker alleges that he was in segregation for approximately three weeks, from September 14 until October 4, when he was transferred to TTCC. Courts have held that placement in segregation for significantly longer periods does not constitute "an atypical and significant hardship." *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (eighteen months); *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (fourteen months); *Albiola v. Pugh*, No. 4:14CV1645, 2015 WL 1915289, at *6 (N.D. Ohio Apr. 27, 2015) (one hundred thirty-seven days).

Moreover, Walker does not allege that he was actually found guilty of a disciplinary violation which resulted in the loss of good time credits; he alleges only that he was told he would be unable to *earn* good time credits while in segregation. "The fact that the administrative segregation placement may have a negative implication on [the prisoner's]

8

opportunity to earn sentence credits . . . is a collateral consequence of . . . placement in administrative segregation that is insufficient to create a liberty interest." *Randolph v. Campbell*, 25 F. App'x 261, 263 (6th Cir. 2001); *see also Shelton*, 2017 WL 1653581, at *2; *Boldry v. Henderson Cnty. Detention Ctr.*, No. 4:16CV-P88-JHM, 2017 WL 489425, at *3 (W.D. Ky. Feb. 6, 2017); *Edwards v. Killingsworth*, Nos. 1:15-cv-00014, 1:15-cv-00016, 2015 WL 1839417, at *4 (M.D. Tenn. Apr. 20, 2015).

Walker also alleges that Defendant Bernard's actions violated Tennessee Department of Correction (TDOC) policies. However, mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *Rienholtz v. Campbell*, 64 F. Supp. 2d 721, 729-30 (W.D. Tenn.), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (citing *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-71 (6th Cir. 1995)). Section 1983 therefore does not provide a remedy for violation of state laws or regulations. *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate."). Nor does a prisoner have a due process right to be free of false disciplinary charges. *See Upshaw v. Jones*, No. 14-2534-JDT-TMP, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015) (citing *Person v. Campbell*, 182 F.3d 918, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) (unpublished)).

To the extent Walker asserts an Eighth Amendment claim against Defendant Bernard, he fails to state a claim. The Eighth Amendment prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). An Eighth Amendment

claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that prison officials acted with the requisite intent, that is, that the officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Helling v. McKinney*, 509 U.S. 25, 32 (1993); *Woods v. Lecureux*, 110 F.3d 1215, 1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus, "the prison official must know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837-38.

The conditions of a prisoner's confinement may be considered cruel and unusual when they deprive inmates of "the minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Gamble*, 429 U.S. at 103-04. A prisoner must allege "extreme deprivations . . . to make out a conditions-of-confinement claim." *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992).

Walker does not allege conditions that rise to the level of an Eighth Amendment violation. Walker alleges he was forced to wait for four hours in one of the segregation showers and then received no personal hygiene items for seven days. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment." *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987). "'Placement

10

in segregation is a routine discomfort that is a part of the penalty that criminal offenders pay for their offenses against society.'" *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (quoting *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003)). Moreover, the Sixth Circuit has concluded that being denied personal hygiene items "for a 'brief span of time . . ., i.e., only six days' is not actionable conduct." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000) (unpublished decision)); *see Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003) (citing *Sandin*, 515 U.S. at 484-86, and *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim)). Nor are Defendant Bernard's alleged threats sufficient to constitute an Eighth Amendment violation. *See, e.g., Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that even harassment that constitutes "shameful and utterly unprofessional behavior" is insufficient to constitute cruel and unusual punishment).

Even had Walker alleged conditions sufficient to satisfy the objective element of an Eighth Amendment violation, he does not allege he suffered any injury from his time in segregation. The PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e); *see Cole v. Washburn*, No. 3:17-CV-01197, 2018 WL 274470, at *3 (M.D. Tenn. Jan. 3, 2018) (Plaintiff who alleged he had to sit for five hours in segregation on the wet, cold shower floors, failed to allege physical injury and thus failed to state a claim).

11

Walker alleges that Defendants Grier, Neadham, Walker, and Walton failed to correct the conduct of Defendant Bernard and instead "encourage[ed] the continuation of the conduct." (ECF No. 1 at PageID 13-14.) Under § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

It is not clear whether any Defendant held a supervisory position over Defendant Bernard. Even assuming that to be the case, there is nothing for which the other Defendants may be held accountable because, as discussed, Defendant Bernard's actions did not violate Walker's constitutional rights. *See McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) ("[A] prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor."). Moreover, Walker asserts, but fails to allege facts to suggest, that any Defendant was encouraging Bernard's conduct or directly participating in it. His allegations include that Defendant Grier refused to leave her office to allow Bernard to question Walker alone and reminded Bernard that inmate Brown had admitted to owning the drugs found, Defendants Neadham and Walker escorted the Plaintiff to segregation, and Defendants Walton and Walker agreed with the Plaintiff he should have talked with an inmate advisor about his time in segregation. The Defendants did not encourage Bernard by questioning Walker's treatment and Bernard's methods, refusing Bernard's requests, and otherwise performed their usual duties. Walker therefore fails to state a supervisory liability claim against any Defendant.

For the foregoing reasons, the complaint is subject to dismissal for failure to state a claim on which relief may be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded.").

Leave to amend is not required where a deficiency cannot be cured. *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that . . . amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to further amend is not warranted.

In conclusion, the Court DISMISSES Walker's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Leave to amend is DENIED. Walker's motion to appoint counsel, (ECF No. 5), is DENIED as moot.

Pursuant to 28 U.S.C. § 1915(a)(3), the Court must also consider whether an appeal by Walker in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the Defendants but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith.

The Court must also address the assessment of the $505 appellate filing fee if Walker nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to take advantage of the installment procedures contained in § 1915(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain*, 716 F.3d at 951. *McGore* sets out specific procedures for implementing the PLRA, §§ 1915(a)-(b). Therefore, Walker is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account for the six months immediately preceding the filing of the notice of appeal.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Walker, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

IT IS SO ORDERED.

    s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE